THE STATE v. CHARLES E. BULLARD.

*Evidence—Proof of Character — General Reputation.*

Where a defendant, in an indictment, offered evidence that his general character was good, it was inadmissible for the State to prove by the witness that there was a prevalent rumor that defendant had been guilty of a fraud named, which is wholly collateral to the issue before the jury.

INDICTMENT for obtaining goods under false pretensions, tried before *Meares, J.,* at November Term, 1887, of the Criminal Court of NEW HANOVER.

The indictment on which the defendant was tried and convicted, in the Criminal Court of New Hanover, charges him with having obtained from the prosecutor, Rufus W. Hicks, by means of false and fraudulent representations of the ownership of a large quantity of rosin by the partnership firm of C. E. Bullard & Co., he being a member thereof.

On the trial, the State introduced as a witness, William F. Melvin, the other partner, and examined him in support of the charge. On the cross-examination, defendant's counsel, having first inquired of the witness if he was acquainted with the general character of the accused, and received an affirmative reply, asked what was his general character, and to this the witness answered, " that a majority of the people said that his character was good." Thereupon, the Solicitor said to the witness, " You say that the majority of the people say that the defendant's character is good, what do others say of his character?" The question was objected to, but allowed, and defendant's exception to the ruling entered. The witness answered, " Others said that defendant is a hard case." The Solicitor then put the further interrogatory to the witness: " Do you not know that it was extensively talked about, and said, that the defendant practiced a fraud upon

the firm of Worth & Worth?" This was also objected to, and the objection being overruled, and exception being taken to the ruling, the witness answered: ".The defendant had some kind of an entanglement with the firm of Worth & Worth, and turned over some mules to them in settlement, and it was talked about."

*Attorney General* and. *Mr. J. D. Bellamy,* for the State.
*Mr. D. L. Russell,* for the defendant.

SMITH, C. J., (after stating the facts). The only question we propose to consider, in disposing of.the. appeal, is raised by the exception to the last interrogatory, and the response thereto.

The information elicited from the witness, in itself, not very definite, nor plainly prejudicial to the defendant, but taken in connection with the inquiry to which it responds, it cannot but be injurious to the defendant, and its import must be ascertained by their obvious relations.

The question is, in substance, did not the defendant, according to report, practice a fraud upon the firm named? The answer is, in a degree, in the affirmative, called by the witness " an entanglement," to extricate himself from which, he had it adjusted by letting the firm have mules. This, then, is a specific interrogatory as to another fraudulent act, wholly collateral to the issue before the jury, and though offered in disparagement of the defendant's character, was, we think, clearly inadmissible for that or any other injurious purpose as the case then stood, and there was error in its reception. It was not less so, because resting in rumor, than if supported by direct proof of the fact. In either case, the imputation of the offence would be open to contradiction or explanation from the witness, and thus, other distracting issues would be formed, well calculated to mislead the jury in determining the truth of the present criminal charge. Such

discrediting information may be sought from a witness under examination as to himself, because the inquiry stops with his answer, which is conclusive; and he may well be supposed to meet it, when only addressed to himself. Such has been the general, if not uniform, practice in this State, and the rule is just and reasonable in the conduct of judicial trials, and supported by authority.

In *State* v. *Boswell*, 2 Dev., 209, TOOMER, J., in delivering the opinion, thus lays down the rule of practice:

" A witness introduced to impeach the general character of another, should not be permitted to give evidence of particular facts, nor repeat the mere hearsay of strangers to the witness, whose testimony is intended to be discredited. He should only speak of the general moral character of the witness, as known among his neighbors and acquaintances. The discrediting witness should not express an opinion founded on his knowledge of particular facts, nor upon the hearsay of strangers to the witness, intended to be discredited."

To this, we may add, nor should the jury form an opinion based on such information or report.

In essentially the same language, HENDERSON, C. J., in *Barton* v. *Morphes*, decided at the next term and reported in the same volume, at page 520, re-affirms the rule: " Where character is not in issue," he remarks, " but comes in question incidentally as that of a witness does, the rule is that specific charges of criminal or corrupt acts are not to be heard to impeach it. Two reasons are given for the rule, either of which, I think, is sufficient to sustain it: the first is the number of issues such evidence is calculated to create, thereby consuming the time of the Court and abstracting the mind from the main issue; the other is, that both the party and witness would almost always be wholly unprepared to meet and repel the charges. But these reasons do not go to exclude proof of bad character by common report or reputation, for that is single in its nature, and but one issue can

arise upon it." But the same reason does not apply to evidence disparaging to the witness, and drawn from himself, as we have already stated, and as decided in *State* v. *Cherry*, 63 N. C., 493.

The ruling in *State* v. *Perkins*, 66 N. C., 126, where it is held that upon a cross-examination of one witness, who has testified as to the character of another, he may be asked to name the persons whom he heard speak in derogation of the character of the latter, is not in conflict with the other cases; for the question is general, and but a means of finding out the extent of the bad repute, and its value as discrediting evidence. To the like effect are the text books on the law of evidence. 1 Whart., Cr. Law, § 814; 1 Green. Ev., §§ 448, 449.

The inquiry, allowed in this case, was of a specific act of deceit and fraud, and this resting on rumor only, and to what extent the rumor prevailed, does not appear akin to that attributed to him in this indictment.

There is error, and the verdict must be set aside in consequence of it, and a *venire de novo* awarded.

Error.            *Venire de novo.*