THE STATE v. W. A. AUSTIN and ELLEN BROOKS.

*Fornication and Adultery — Evidence — Character — Husband and Wife— Witness— Verdict— Waiver.*

1. On the trial of an indictment for fornication and adultery, much testimony had been introduced tending to prove the unlawful relations of the defendants. One witness testified that he met the male defendant one night within a short distance of the female defendant's house going in that direction when he (defendant) said he was going to another place, and that on a subsequent investigation of the matter he denied making such statement: *Held*, that the evidence was competent as corroborative of other testimony of visits to female defendant's residence.

2. A declaration of the wife of defendant, made in his presence in the course of a public investigation of the charge, and the reply made by him thereto, is competent evidence against him.

3. A witness testified that the character of the defendant was good, notwithstanding that on a former trial of the offence charged the jury had been unable to agree on a verdict, whereupon the defendant proposed to ask the witness what was the current report as to how the jury was divided: *Held*, to be incompetent.

4. Two witnesses testified that they saw the defendants in actual sexual intercourse, and there was other evidence of the male defendant stealthily visiting the female defendant's house at night, being in a room alone with her and the lights extinguished, and of other circumstances of a suspicious nature : *Held*, it was not error to refuse to charge the jury, that if they were not satisfied of the guilt of defendants from the evidence of the witnesses to the actual fact they should acquit.

5. A person charged with an offence has a right to have the verdict rendered in the presence of the Judge ; but, except in capital cases, this right may be waived and the verdict received by the Clerk.

6. The presence of counsel at the rendition of a verdict has never been held to be essential to its validity.

This an APPEAL from August Term, 1890, of MECKLEN-BURG Criminal Court, *Meares, J.,* presiding.

The indictment was found in Union County, and removed for trial.

The facts are sufficiently stated in the opinion.

*The Attorney General,* for the State.
*Mr. D. A. Covington*, for defendants.

CLARK, J.: The defendants were indicted for fornication and adultery.

*Exception 1.*—One Helms, a witness for the State, testified that he met the male defendant one night about two hundred yards from the female defendant's house, going in the direction of her house, and defendant told him he was going to Coleman Stewart's to meet Elliott (an Alliance lecturer), and when this matter was tried before the Alliance the defendant denied telling him so and denied meeting him. To this defendant objected. There was evidence by many witnesses of the defendant Austin making nocturnal visits to the female defendant's house; of being seen in the room alone with her at night; of going into her room, the light being put out; and of leaving his horse hitched out at night, and going with his shoes off to her house; of walking up a stream to conceal his tracks; of being seen embracing her and the like. The evidence, therefore, of his being seen near her house after dark, going in that direction, and his saying he was going to meet an Alliance lecturer, which statement he denied on the Alliance trial, when it was shown that he did not meet the Alliance lecturer on that night, and also his denial of meeting the witness, was competent as a circumstance tending to corroborate the other evidence of his visits by night to his co-defendant.

"Every circumstance calculated to throw light on the alleged crime and aid the jury in coming to a correct conclusion is competent." *State* v. *Bishop*, 98 N. C., 773, and cases there cited; *State* v. *Christmas*, 101 N. C., 749.

*Exception 2.*—The same witness stated, the defendants objecting, that at the Alliance trial (they having been on

trial before the local Alliance for expulsion for this offence) the defendant Austin's wife said that she could account for her husband except that night Helms said he had met him; that her husband got on his horse that night and rode off, saying he was going to Coleman Stewart's, and the defendant Austin had thereupon replied that he did tell his wife so, but after riding one hundred yards he turned and rode back unseen by anyone, and went into a room which was not his bed-room and which he was not in the habit of occupying, and slept till nearly day-light, when he rode off to Coleman Stewart's. This evidence was competent as being a statement made by the defendant as to his whereabouts and doings, there being evidence that he did not get to Coleman Stewart's till next morning. What his wife said was competent from having been made in his presence, and from being replied to by him, and as having drawn out his statement.

*Exception 3.*—One Winchester, witness for the defence, testified that the character of the defendants was good. On cross-examination, he was asked if he would say that the character of the defendants was good at the time, notwithstanding the Alliance trial and the hung jury at the trial held in the Superior Court of Union County, and the witness answered "Yes." On the re-direct examination, the defendant's counsel asked the witness if he knew of his own knowledge how the hung jury stood, or how they were divided, and he answered "No." The defendant's counsel then proposed to ask the witness how the current report or the general rumor was as to how the "hung jury" was divided. On objection by the State, the question was ruled out, and the defendants excepted. The law does not countenance or permit the endless ramification and the countless collateral issues which such a course of examination would introduce. It was held incompetent, on a question as to character, to prove a general report as to any particular act done by the party

whose character was being testified to. *State* v. *Bullard,* 100
N. C., 486. It was, therefore, certainly incompetent to show
in what degree certain twelve men were rumored to have
differed in opinion as to a certain act alleged to have been
done by the defendants. It was only competent to show the
general reputation for character—not the general reputation
as to any particular act—still less the reputation how certain
men thought as to the truth of a certain alleged particular
act. As a test of the witness, it is competent to ask him to
name persons whom he has heard say that the character of
the person in question was good or bad. *State* v. *Perkins,* 66
N. C., 126. The rule extends no further. It was, therefore,
incompetent for the State to ask the question as to the "hung
jury." The defendant did not object to it. He should have
done so, or have asked the Court to strike it out. It was no
correction of the error to extend the error still further by
incompetent and irrelevant inquiries. The Court, at least,
gave the defendant the same amount of license when it per-
mitted him to show, if he could, if the witness knew how
the jury stood. It appeared that he did not, and the Court
properly refused to inquire as to the reputation of how the
jury had stood. The witness was one out of some sixty
examined in this case. He was testifying as to the good
character of the defendant, and the investigation as to how
far his opinion as to the general character of the defendants
should be discredited by the effect which would probably be
had on the public mind by the report as to how a former
jury had divided in opinion as to an act of the defendant
(for that is the only legal bearing and relevancy of the testi-
mony), when he had stated he did not know how they stood,
is too remote from the issue, which was, whether the defend-
ants, a married man and a widow, had lewdly and lascivi-
ously bedded and cohabited together. In no part of a trial
at *nisi prius* is the disposition "to run rabbits" more strongly
developed than in the examination of character witnesses.

The Courts have always repressed it. Its indulgence beyond the well recognized legal limits can serve no good purpose. It would serve (if not repressed) to open old scandals, confuse the jury with multiplicity of issues and prolong to a needless and expensive length the trial of causes, without any compensation in the better investigation of the truth as to the real issue before the Court and jury. It is better *super stare antiquas vias.*

*Exception 4.*—The defendants asked the Court to charge that the only direct evidence of criminal intimacy between the defendants which had been testified in this case was that of Bob Marsh and John Brooks, and if the jury should not believe this evidence, or should entertain a reasonable doubt as to the truth thereof, it would be their duty to acquit. These two witnesses had testified to finding the defendants in actual sexual intercourse. There was testimony by other witnesses of the male defendant stealthily visiting the chamber of the female by night and remaining some hours; of his going to and coming from her room by night with his shoes off; of being in a room alone with her and then extinguishing the light, and his subsequently being discovered in the act of endeavoring to escape from the room unperceived; of their riding together in a buggy after sun-down; of his kissing her, and much other evidence tending to show an immoral intimacy. The instruction asked, therefore, was, in effect, that unless the jury believed the testimony as to the defendants being seen in the very act, it was their duty to acquit. The instruction was properly refused. *State* v. *Poteet*, 8 Ired., 23; *State* v. *Eliason*, 91 N. C., 564. Besides, the instruction, if given, would have been a clear violation of the statute forbidding the Judge to express an opinion upon the weight of the testimony. *The Code*, § 413; *Jackson* v. *Commissioners*, 76 N. C., 282. In telling the jury the value to be given the testimony, with that of these two witnesses omitted, the Court would necessarily have given its opinion

as to the weight of their testimony, and so, by varying the prayers for instructions with the names of different witnesses, the Court, by a process of elimination, might be called on to express its opinion as to the value to be given to the testimony of each and every witness.

*Exception 5.*—As soon as the jury had retired, after receiving the charge, the Court instructed the Clerk, from the bench, in a clear and distinct voice, to receive the verdict, and to have the defendants present. The defendants' counsel had then left the court-room, and defendants had no knowledge of and did not consent to the order. On the return of the jury the Clerk received the verdict, both defendants being present. The defendants afterwards moved for a new trial and in arrest of judgment, on the ground that the verdict was received in the absence of the Judge and of defendants' counsel and in the recess of the Court. The case also states that while the jury were considering their verdict the Judge remarked in the presence of the defendants' counsel that he had instructed the Clerk to receive the verdict, and the counsel made no response; that as the jury came into the court-house the Clerk told another of defendants' counsel that he was going in to take the verdict; that he asked if the Judge was present, and the Clerk replied that he was not, and had instructed him (the Clerk) to receive the verdict; that the counsel then did not go into the court-room, but went to the Solicitor and told him of the conversation; that in reply to the Solicitor's inquiry if he would consent to the Clerk's receiving the verdict, he replied that he would not, but before the Solicitor could reach the court-room the verdict had been rendered.

The defendants had the right to have the verdict rendered in the presence of the Judge, and it is best that it should always be done. But it is certainly competent, except in capital cases, for it to be received by the Clerk if no exception is made, and the opportunity is given the defendant to

108—50

object, "and such practice is very common." PEARSON, C. J., in *Houston* v. *Potts*, 65 N. C., 41. Indeed, in all cases not capital the defendant may even waive his own right to be present, either expressly (*State* v. *Epps*, 76 N. C., 55) or by voluntarily withdrawing himself from the jurisdiction of the Court (*State* v. *Kelly*, 97 N. C., 404; *State* v. *Jacobs*, 107 N. C., 772), though his counsel cannot waive it for him. *State* v. *Jenkins*, 84 N. C., 812.

In the present instance the defendants were both present in the court-room when the verdict was rendered, and made no objection to the absence of the Judge or of their counsel. Had they done so, doubtless the Judge and counsel would have been sent for, or if that had been refused the defendants could have then presented the matter as ground for new trial to the Court below; and if refused, have appealed. It is true the case states that the defendants did not expressly consent to the verdict being received in the Judge's absence, but they permitted it to be received in his absence without objection; they were presumably in the court-room when, on the retirement of the jury, the Judge instructed the Clerk to receive the verdict, and made no objection; and the Judge told one of the counsel, personally, of such instruction, and received no indication of objection; the Clerk, before receiving the verdict, told the other counsel that he was then on his way to do so and received no objection, though an objection then from the counsel or from the defendants would have doubtless caused the Judge to be sent for. It is true counsel afterwards told the Solicitor he did not consent, but too late to stop the rendition of the verdict. If he wished the Judge to be sent for, why did he not make that statement to the Clerk?

It is not suggested that the defendants were prejudiced in any way by the Judge's absence. If there was any evidence indicating that they had been, we are sure their able and astute counsel would have pointed it out, and the just Judge who tried

the cause would promptly have set the verdict aside. The motion seems rather based upon a dislike to the tenor of the verdict itself, and a desire to be relieved from it than upon any grievance sustained by the manner of its rendition. The presence of counsel at the rendition of the verdict has never been held essential to its validity. *State* v. *Jones,* 91 N. C., 654. Besides, counsel had notice that the Clerk was about to receive the verdict, and did not go in the court-room, nor did he object to the absence of the Judge, as he might then have done had he chosen to do so.

Affirmed.