The prisoner was indicted with one Andy Bates for the murder of George Bates, and was convicted of manslaughter, the other defendant being acquitted. The prisoner, John Killian, appealed.
When the State closed its testimony and rested its case, the prisoner, John Killian, moved that a nonsuit be entered under the statute, Gregory's Supplement, sec. 3265a. This the court refused to do, and the prisoner excepted. It is contended that when this motion was made there was no evidence against the prisoner, John Killian, and if this be correct, and he had rested his case there, we would have sustained his motion and reversed the lower court. He was not content to stop and risk his case upon the State's testimony, but himself introduced *Page 852 
witnesses, and from their testimony and other testimony in the case we are of the opinion that there was some evidence of his guilty. It is perfectly clear that the deceased was killed either by Andy Bates, his father, or the prisoner, John Killian. The former testified that he did not cut his son, and there was some evidence tending to show that a knife was found near or at the place where the homicide was committed which corresponded somewhat with one that John Killian had. There was other evidence tending to connect him with the act of killing, but it is needless to review all of it, as, if there was any at all, the motion was properly denied.
But the prisoner does not rely so much upon the absence of proof as to his guilt as he does upon the position taken by him in argument and his brief, that notwithstanding the fact that he introduced evidence after moving for a nonsuit when the State rested, he is entitled to have his motion considered upon the evidence as it was at that time, and that he did not waive his motion, or the exception to its denial by the court, by introducing evidence in his own behalf, even if the latter does tend to establish his guilt. We cannot accept this construction of the statute. The latter provides that the prisoner, at the close of the State's evidence, when it has rested its case, may move to dismiss or for judgment of nonsuit, and if the motion is allowed it shall have the force and effect of an acquittal, but if it is refused, the prisoner may except, and if he introduces no evidence, the case shall be submitted on the evidence introduced by the State, and he shall have the benefit of his exception on appeal to this Court. But he shall not be prevented from introducing evidence after his motion has been overruled, and may again move for judgment of nonsuit after all the evidence has been concluded, and if this motion is also refused, upon consideration of all the evidence, he may except, and if convicted, he shall have the benefit of his exception on appeal, and the motion, if allowed at the time, or in this Court on appeal, shall in all cases have the force and effect of a verdict of (794) "Not guilty." There would seem to be no doubt as to the meaning of this statute. The prisoner's counsel argued that it was not like the "Hinsdale Act" (Laws 1897, ch. 109; Laws 1899, ch. 131; Laws, 1901, ch. 594; Revisal of 1905, sec. 539), because that act provides expressly that if the defendant introduces evidence, he waives any previous exception to the refusal of his motion to nonsuit upon the plaintiff's evidence; but while the phraseology is different, the meaning of the two acts is substantially the same. It will be noted that the second motion, or renewal of the first, must rest upon a consideration of all the evidence in the case. This plainly excludes the idea that the State's evidence first introduced may be considered alone or separate from the entire mass. The object of the statute in permitting the prisoner to *Page 853 
introduce evidence after moving for a nonsuit was to preserve to him a right which did not exist before the statute was passed. The presentChief Justice said in Prevatt v. Harrelson, quoting from Means v. R. R.,126 N.C. 429: "The rule stands now just as it did before the passage of chapter 109, Laws 1897, and the amendment of 1899, except that under this legislation it is discretionary with the defendant whether he will introduce evidence after the motion to dismiss, or not; while, before these acts, it was discretionary with the court whether it would allow the defendant to introduce evidence after resting his case and making the motion." Justice Hoke said in S. v. Andrews, 166 N.C. 349, referring to the statute under consideration (Gregory Suppl., sec. 3265a): "The statute, as its terms import, was no doubt passed to enable a defendant to present the question of his guilt or innocence, on the State's testimony, as a legal proposition to the judge, and this, if successful, avoid the risk of an adverse jury verdict, and, if the ruling was against him and no further evidence is offered, to preserve the point on appeal from a final judgment in the trial then pending, a course not open to him before its enactment," citing S. v. Moody, 150 N.C. 847. And again, quoting the statute: "The very statute under which defendant now endeavors to proceed is in full recognition of the principle. Thus, when the motion is made on the State's evidence, `the case shall be submitted to the jury as in other cases, and the defendant shall have the benefit of his exception on appeal, etc.,' and `if further evidence is introduced and the motion is renewed on the entire testimony and refused, the defendant may except and, after the jury shall have rendered its verdict, defendant shall have the benefit of the latter exception on appeal, etc.,'" It may further be said that if the prisoner's contention is right, there would be no necessity of a second motion or exception, as, according to his own view, the point must be decided upon the State's evidence alone which was introduced prior to his first motion. The statute did not contemplate such a procedure, but, on the contrary, requires us to review the whole of the proof upon the last motion entered by the prisoner. (795) We must not be understood as conceding that there was no evidence against the prisoner when the State rested, but have assumed, for the sake of the discussion, that there was not.
The objection to the charge is without real merit. The judge, in opening his charge, told the jury that the burden of proof was upon the State, and that they must be satisfied of the guilt of the prisoner beyond a reasonable doubt before they could convict him. It was not necessary that he should repeat this rule of law every time he referred to any finding from the evidence, as he had sufficiently instructed them as to the burden and the quantum of proof, and this applied to his charge throughout. We should construe the charge as a whole. McCurry v. Purgason, *Page 854 170 N.C. 463; Kornegay v. R. R., 154 N.C. 389; McNeill v. R. R.,167 N.C. 396. We said in McCurry v. Purgason, supra: "The exceptions addressed to a portion of the charge of the court to the jury cannot be sustained. If we consider this except from the charge alone, it is not subject to the criticism that it omitted any reference to the evidence, or to the rule as to its weight or preponderance, while instructing the jury as to the burden on plaintiff of proving the facts necessary to a recovery by her. We think it sufficiently states the correct rule, and with reasonable distinctness it told the jury that the burden of proof was upon the plaintiff to make out her case and to offer evidence `sufficient by its greater weight to satisfy them' of the truth of her allegation. But it is certainly clear and full enough, when construed with other parts of the charge, it having been long since settled that the latter should be considered as a whole. We are not permitted to construe away the plain meaning of a charge, when thus viewed, by any process of dissection which dismembers it and leaves only its separate parts before us", citingAman v. Lumber Co., 160 N.C. 374. And the same was held in S. v.Jim Cooper, 170 N.C. 719, as to an exception almost identical with this one. We there said: "The prisoner excepted to an instruction of the court to the effect that if he had failed to satisfy the jury that he did not have mental capacity sufficient to commit a crime the verdict would be guilty, the particular objection being that the court should have said if he had failed to satisfy the jury `from the evidence' of his mental incapacity he should be convicted; but in the sentence immediately preceding the court had instructed the jury that `If the defendant has satisfied you from the evidence that he did not have sufficient mental capacity to commit a crime, he should be acquitted.' The two instructions are so intimately connected with each other that no intelligent jury could have misunderstood what was meant, nor can we reasonably suppose that they would find the fact one way or the other without any evidence, or otherwise than `from the evidence.' The charge of (796) the court must be considered as a whole, in the same connected way as given to the jury, and upon the presumption that the jury did not overlook any portion of it. If, when so construed, it presents the law fairly and correctly to the jury, there is no ground for reversing the judgment, though some of the expressions, when standing alone, may be regarded as erroneous," citing Thompson on Trials, sec. 2407; S. v.Robertson, 166 N.C. 356; S. v. Lance, 149 N.C. 551, and other cases.
There are some objections to evidence, but they are not at all tenable. It is competent, of course, to impeach one witness by another if evidence is confined to his general character, but you cannot descend into particulars or show specific acts of wrong doing. S. v. Holly, 155 N.C. 485;S. v. Wilson, 158 N.C. 599; S. v. Thornton, 136 N.C. 310. The *Page 855 
rule is different when you are testing the credibility of the witness himself. He may be asked questions tending to disparage him within certain limitations. (S. v. March, 146 N.C. 320), and when the witness has testified to the character of another he may be cross-examined as to particular facts in order to attack his estimate of character or to contradict him, or for the purpose of testing his accuracy. S. v. Austin,108 N.C. 780; S. v. Perkins, 66 N.C. 126; S. v. Holly, supra.
Chief Justice Person said in S. v. Perkins, supra: "It is settled that a witness who swears to the general bad character of another witness on the other side may, upon cross-examination, be asked to name the individuals whom he heard speak disparagingly of the witness, and what was said. This is everyday practice, and the exception was taken under a misapprehension as to the difference between an examination in Chief and a cross-examination, when the party endeavoring to sustain the witness, whose general character is attacked, may go into particulars as to persons and what they said".
But if there was any error committed in respect to evidence, it was harmless, as the bad character of the participants in this tragedy was more than fairly well established. It was a "sorry lot" and their debauchery and nocturnal orgies culminated, as might have been expected, in this midnight tragedy, the perpetrator being, no doubt, inflamed by jealousy, of which there was some evidence. The father may have slain his son, but the jury might well have inferred from the circumstances, apart from the father's positive denial of his guilt, that the prisoners, under the guise of a peace-maker, had taken advantage of the situation and dealt the fatal stab. But in any view it was for the jury to say what was the truth of the matter.
The prisoner complaints that the sentence is illegal and excessive. The court entered the following judgment: "It appearing to the satisfaction of the court that there is good reason to believe that the safe custody of the defendant will be imperiled by working him on the roads, and good reason to fear that a sentence to the roads will possibly (797) lead to his escape, it is adjudged that the defendant, John Killian, be imprisoned in the State Prison for a term of three years, to wear a felon's stripes," the prisoner excepted.
Revisal, sec. 3632, provides: "If any person shall commit the crime of manslaughter, he shall be punished by imprisonment in the county jail or State's Prison not less than four months nor more than twenty years." Public Laws 1909, ch. 80, sec. 6, declares: "That all male persons confined in the county jail, either under a final sentence of the courts of the State of North Carolina or the police or city court of the city of Asheville, for crime or imprisonment or nonpayment of fines and costs, or under final judgment in cases of bastardy or under the vagrant *Page 856 
acts, and all persons sentenced from said county to prison for a term of less than ten years, shall be worked upon said public roads under the provisions of this act." But the later act was not intended to take away the discretion of the judge, under section 3632 of the Revisal, to sentence to the State's Prison instead of the jail of the county. It will be noted that the act of 1909, ch. 80, sec. 6, refers to persons imprisoned in the county jail for certain offenses, and in order to enlarge the number of cases where the prisoners might be worked on the roads, the operation of the act in this respect was extended to all crimes where the persons convicted were sentenced to a term of less than ten years in prison, meaning the county jail. It surely was not the purpose to repeal the general law allowing the judge to impose alternative punishment by confinement at hard labor in the penitentiary. In order to reach the conclusion that such was the intention, the language should be clear and explicit to that effect. The judge might have sentenced the convict to the county jail, and in that event the local statute would have applied, but he elected to imprison him in the State's penitentiary for the reason assigned by him, and this was a proper and legal sentence. We must ascertain the legislative intent from a consideration of both statutes and the inherent nature of the subject deal with, including the mischief proposed to be remedied or the new remedy to be applied. Abernethy v. Comrs, 169 N.C. 631. Thus considered, we are of the opinion that the judge adopted the right course.
We find no error in the record, after a careful examination of it.
No error.
Cited: S. v. Orr, 175 N.C. 777; S. v. Helms, 181 N.C. 570, 571; S.v. Brinkley, 183 N.C. 722; S. v. Smith, 183 N.C. 729; S. v. Pasour,183 N.C. 794; Harper v. Supply Co., 184 N.C. 205; S. v. Whisnant,185 N.C. 611; S. v. Reagan, 185 N.C. 712; S. v. Steen, 185 N.C. 778; Hancockv. Southgate, 186 N.C. 282; S. v. Hayes, 187 N.C. 491; S. v. Hilton,188 N.C. 832; S. v. Rideout, 189 N.C. 160; S. v. Brodie, 190 N.C. 557; S. v.Colson, 193 N.C. 239; S. v. Nelson, 200 N.C. 72; S. v. Bittings,206 N.C. 802; S. v. Smoak, 213 N.C. 94; S. v. Caper, 215 N.C. 671;S. v. Norton, 222 N.C. 420; S. v. Church, 229 N.C. 720; S. v. Tyndall,230 N.C. 175. *Page 857 
(798)