O. M. RUTLEDGE, TRADING AS RUTLEDGE & COMPANY, v. A. T. GRIFFIN MANUFACTURING COMPANY.

(Filed 3 May, 1922.)

**1. Limitation of Actions—Adverse Possession—Husband and Wife.**

Where the husband owns or has title to the *locus in quo*, his living thereon with his wife is his sole possession in regard to the question of title ripened by adverse possession, and the principle upon which it is regarded as that of his wife when she owned the title and he claims under a void deed from her, as decided in *Kornegay v. Price*, 178 N. C., 441, does not apply.

**2. Trespass—Standing Timber—Damages—Boundaries.**

Where the plaintiff claims timber growing upon lands by adverse possession of the lands, depending upon whether defendant's boundary was the high- or low-water mark of a stream, it is competent for the plaintiff to show the location of the high-water mark, and where the land alleged to have been trespassed upon was situated, and not only what damages had been done to it from the cutting and removing of the trees, but how and to what extent, if any, the remaining land had been injured or depreciated by the defendant's alleged trespass.

**3. Same—Evidence.**

Where the plaintiff brought an action in the nature of an action for trespass and for damages for the defendant's cutting and removing timber standing upon the lands, which he claims by adverse possession, depending upon the location of defendant's boundary line, testimony of the defendant's grantors that he had altered his deed with respect to this boundary is competent upon the question of defendant's good faith in claiming the lands and denying trespass, and as impeaching the validity of the defense and showing the true location of defendant's boundary; though not with reference, in this case, to its legal effect upon the continued validity of the defendant's deed.

**4. Evidence—Cross-examinations—Impeachment—Damages—Trials.**

Where the defendant corporation has denied the trespass and the wrongful cutting and removing timber upon the plaintiff's land, and its general manager has testified as to the comparative value of the timber, it is competent for the plaintiff to cross-examine him as to those matters to test the value of his testimony as to the value of the land, timber, etc., and also to show his animus, feeling, or bias.

**5. Appeal and Error—Evidence—Objections and Exceptions—Broadside Exceptions.**

Exceptions to testimony, to be considered on appeal, must not be to several distinct parts without particularly indicating the ground of objection.

APPEAL by defendant from *Lyon, J.,* at January Term, 1922, of DUPLIN.

*John A. Gavin, Jr., and Rouse & Rouse for plaintiff.*
*Stevens, Beasley & Stevens and Teague & Dees for defendant.*

WALKER, J.   This is an action, in the nature of an action for tres-
pass, to recover damages from the defendant for cutting and removing
timber from that portion of the plaintiff's land, known as the J. F.
Watkins tract of land, which lies between Poley Branch and the high-
water mark of the mill-pond lying north of the Poley Branch.   The
plaintiff acquired the title to this timber by *mesne* conveyances from
J. F. Watkins for the timber of the J. F. Watkins tract of land, which
included the timber alleged to have been unlawfully and wrongfully cut
and removed by the defendant, that is, the timber in controversy being
on the land between the Poley Branch and the high-water mark of the
branch on the north side, and the jury found that the defendant com-
mitted the trespass by cutting and removing the timber, as alleged.

In order to establish ownership of the timber, the plaintiff introduced
evidence tending to show that J. F. Watkins had been in the adverse
and continuous possession of the land for more than forty years before
his death in 1913, claiming it as his own and as belonging to him in his
own right, and the case was submitted to the jury by the court only in
this view, that is, whether J. F. Watkins had acquired title to the land
by such an adverse possession of it by him.   This fact it seems to us
eliminates many of the objections made and questions raised by the
defendant.   One of its contentions being that the adverse possession of
J. F. Watkins could not be considered as against his wife, Mrs. Watkins,
who was the daughter of Daniel B. Newton.   But we do not understand
from the record that it ever was so allowed to have effect.   It does not
even appear that his wife had any title to the land, or that she even
claimed any, but all that does appear in that respect tends to show the
contrary to be the case.

We may refer to one part of the evidence from which it would appear
that the wife did not claim the land, nor did her children, but at J. F.
Watkins' death the tract of land on which the timber in controversy
stood was divided by order of court among his heirs alone, without any
claim or suggestion that Mrs. Watkins was interested at all in it.   It
appears from the syllabus of the case relied on by the defendant that
it was there held as follows:  "The possession of lands by the husband
under a deed made to him by his wife, void for noncompliance with
Rev., 2107, is for the benefit of the wife, and during the continuance of
the marriage relation during her life cannot be considered as adverse to
her and ripen title in him by sufficient adverse possession.   *Semble,*
after her death his possession would be adverse possession against her
heirs; and *quære* as to whether it would be such before demand is made

for possession." *Kornegay v. Price,* 178 N. C., 441. The principle of that case does not apply here, as it does not appear that J. F. Watkins held in opposition to his wife, or adversely to her, or that she had any title, but that he held, in his own right, and adversely to every one. The title having thus vested in J. F. Watkins, he conveyed the land to L. D. Atkins, who, with his wife, conveyed it to M. T. Murray, and the latter, with his wife, to the plaintiff.

It was, of course, competent to show where the land was situated that had been trespassed upon by cutting the trees and what damage had been done to it, not only that which arose from cutting and removing the trees, but how, and to what extent, the remaining land had been injured, or depreciated in value, by the acts of trespass, so that the full amount of the damages could be estimated. It was also competent and pertinent to show where the "high-water mark" and Poley Branch were, as they were alleged to have been called for in the deed. There was something said about tampering with the deed of H. J. Faison and wife to the defendant, those witnesses having testified that they had only conveyed to the defendant the timber to the high-water mark of the mill-pond, which was the southern boundary of their land, and that the deed then exhibited was not the one they signed and delivered to the defendant, that the sheets were now of different width, one of the four sheets not being like the others; and that the deed was torn, but, as we have said, this evidence proved to be harmless owing to the careful and discriminating manner in which the learned judge charged the jury and restricted their attention solely to the question as to the adverse possession of J. F. Watkins, the cutting of the timber and the damages. If the defendant had mutilated the deed of Faison and wife, or defaced it in any material way, we do not see why it was not competent to show it upon the question of the *defendant's* good faith in claiming the land, and denying the trespass; and as impeaching the validity of the defense, and as showing the true location of the defendant's land to be different from what it was claimed to be. And further, it was admissible to show that the alleged spurious deed differed from the original as signed by Faison and wife, and in what respects it differed, so as to establish the real boundaries of the land as they conveyed it. In this connection the plaintiff contended that notwithstanding the testimony of H. J. Faison and wife that the paper exhibited to the court by the defendant as the deed from them was not the original deed so delivered to the defendant, the defendant failed to offer any evidence explanatory of the appearance of the paper and of the other facts testified by H. J. Faison and wife tending to establish the falsification of the said paper, and that the deed to the defendant's grantor, H. J. Faison, limits his boundaries to the high-water mark, yet the defendant is undertaking in this action to

claim title to the timber on the land between the high-water mark and the run of Poley Branch by virtue of a conveyance which its grantors declare bears a substituted page which changes, as the witnesses testify, the true description by erasing the words "high-water mark" and substituting therefor "the run of Poley Branch." This evidence as to the alteration of the deed was not used, so far as we can discover from the record, for any purpose to which it was not relevant, even if it was met with proper objection at the time it was offered.

We will not consider the alleged alteration with reference to its legal effect upon the continued validity of the deed itself, but only so far as it may have influenced the jury in determining the location of the lands in controversy and upon the question whether there had been a trespass by the defendant.

The objections to the testimony of A. T. Griffin were not well taken. He had denied the trespass by the defendant company of which he was the general manager, and testified to the comparative value of the timber and it was competent to cross-examine him as to those matters and with reference to the Faison deed to the defendant, in order to test the value of his testimony, and especially as to the value of the land and timber and the damages (*Gay v. R. R.*, 148 N. C., 336), and to show his *animus*, feeling, or bias. *Bailey v. Winston*, 157 N. C., 252.

Numerous exceptions were taken to testimony consisting of several distinct parts, without indicating more particularly the ground of the objection. This we have held to be too general. *Holmes v. R. R.*, 181 N. C., 497; *Kennedy v. Trust Co.*, 180 N. C., 225.

Upon a review of the case and a due consideration of the exceptions noted by the defendant, we are of the opinion that it was correctly tried.

No error.