STATE v. JAMES JEFFREYS.

(Filed 20 October, 1926.)

**1. Rape—Assault—Evidence—Identity.**

Where in an action for rape the defense is an alibi, and the prosecutrix has positively identified the prisoner as her assailant, and her testimony was corroborated by the other State's witnesses, evidence that the defendant was identified as the assaulter the next morning after he was arrested, was not erroneously admitted.

**2. Same—Declarations.**

In an action for rape, testimony that the prosecuting witness said soon after the assault "she could hardly sit up," is competent to show the assault had been committed, when the identity of the defendant has been shown.

**3. Evidence—Nonsuit—Criminal Law.**

Where the assault and the identity of the prisoner have been directly testified to, defendant's motion as of nonsuit upon the evidence is properly denied, upon his defense of an alibi.

**4. Evidence—Corroboration—Criminal Law.**

*Held,* in this action for rape, the admission of certain testimony tending to impeach the defendant's testimony, was not erroneous.

**5. Evidence—Character—Substantive Evidence.**

The evidence of the good character of a witness who has testified for the defendant in an action for rape, cannot be considered as substantive evidence to sustain an alibi he has set up as a defense.

**6. Appeal and Error—Objections and Exceptions—Broadside Exceptions.**

An exception that does not particularize as to the error complained of in the admission of evidence, is objectionable as a broadside exception.

INDICTMENT for rape, tried before *Barnhill, Judge Presiding,* and a jury, at May Term, 1926, of WAKE.

The evidence for the State tended to show that on Saturday morning, 19 December, 1925, between eight and nine o'clock, Mrs. Sarah Griffin, a white woman, about fifty years of age, was assaulted near the city rock quarry in Raleigh.

Mrs. Griffin testified that she had seen the said defendant on Friday morning when he had passed by her on the road, and she also testified that she had never seen the man before. She further testified that the defendant "had an old light overcoat on and a cap and was a yellow man; that the same man sits there. I know he is the man. I don't believe anything about it. If I were to live as old again as I am I would know him." She also testified: "He had that overcoat on, light yellow-looking coat like the one he has on." There was also evidence

tending to show that she described her assailant as a "tall, yellow negro" with scar and freckles, did not know which, and had a "mean-looking eye."

The defendant was arrested by police officers in April, 1926, and, while in custody, Mrs. Griffin was asked to come to the jail and see whether or not the defendant was the person who assaulted her. She identified the prisoner.

The defendant denied the assault or that he had ever seen the prosecuting witness; and further asserted that, on 19 December, he was working for Mr. W. H. Harris; that he reached the home of Mr. Harris about seven o'clock and was there on his premises cutting wood until four o'clock in the afternoon. Both Mr. Harris and his wife corroborated the defendant, and Mrs. Harris testified: "Do not think they left there because the axes were running all the time. . . . They first called for the axes between seven and seven-thirty." . . . The home of Mr. Harris was about a mile from the Rock Quarry road where the assault took place.

In regard to the overcoat which the defendant had on, Mr. I. M. Bailey testified that it was his overcoat and was in his possession until about 1 January, 1926, when he gave the coat to a negro named Spencer Thomas. Thomas testified that he got the coat from Mr. Bailey about the second week in January and loaned it to the defendant, Jim Jeffreys, the day before he was arrested.

Messrs. W. B. Hunter, E. B. Crow, Carey K. Durfey and J. T. Mallard testified as to the good character of Mr. and Mrs. Harris.

V. E. Lane, witness for the defendant, testified that on Saturday before Christmas he saw Jim Jeffreys and John Jeffreys, together with their mother, pass the railroad shop between six and seven o'clock, and that he asked them to cut wood for him, but that the mother said they were cutting wood for Mr. Harris.

There was also testimony as to the good character of the State's witness, Mrs. Griffin.

The jury rendered a verdict of guilty, and thereupon judgment was entered sentencing the defendant to death as provided by law, from which judgment the defendant appealed.

*F. T. Bennett* for defendant.
*Attorney-General Brummitt* and *Assistant Attorney-General Nash* for the State.

BROGDEN, J. There are seven exceptions appearing in the record. The first exception is to the following question and answer: "How

soon after he was arrested?" (when State's witness identified defendant) A. "Next morning."

This exception is without merit, because the identity of defendant was one of the main questions in the case, and the fact that the officer testified that the State's witness identified the defendant soon after he was arrested was corroborative of the evidence of the State's witness, Mrs. Griffin, who testified that she did identify the defendant at the jail the next morning after he was arrested.

The second exception was to the following question and answer in reference to the physical condition of prosecutrix immediately after the assault: "Did she complain?" A. "Yes; she said she could hardly sit up."

This evidence was competent to prove that an assault had actually been committed. Certainly, if the State's witness had not been assaulted, there was no crime, and the proof of a crime was an essential part of the State's case.

Therefore, the bodily condition of Mrs. Griffin was competent. "Whenever the bodily or mental feelings or condition of an individual are material to be proved, the usual expression of such feelings are admissible as original evidence." S. v. Hargrave, 97 N. C., 457; Sherrill v. Tel. Co., 117 N. C., 353; Lockhart's Hand Book of Evidence, sec. 209; Howard v. Wright, 173 N. C., 339.

The third and fifth exceptions are taken because of the refusal of the trial judge to nonsuit the case. These exceptions cannot be sustained. The defendant was positively identified by the prosecutrix, who also testified that he was the man who had assaulted her. It was, therefore, necessary to submit the case to the jury.

The fourth exception is to the following question asked the defendant on cross-examination: "Why didn't you ask that man out at Mordecai what he wanted you for and what did they arrest you on Hillsboro street one time for?" This exception cannot be sustained. The question was for the purpose of impeaching the witness and was therefore competent. S. v. Lawhorn, 88 N. C., 634; S. v. Holder, 153 N. C., 606; S. v. Winder, 183 N. C., 776.

The sixth exception is to the refusal of the trial judge to give the following instruction: "That evidence of the good character of a witness for defendant, introduced to establish an alibi, shall be not only considered as affecting the credibility of such witness, but as substantive evidence of the truth of the alibi relied upon by the defendant." The court properly declined to give this instruction. In no aspect of the law could evidence as to the good character of a witness tend to prove that a defendant or some other person was not at a particular place at a particular time. The purpose of character evidence is to enable

the jury to place the proper estimate upon the testimony of a witness. *S. v. Cloninger,* 149 N. C., 567; *S. v. Morse,* 171 N. C., 777.

The seventh exception is as follows: "That it was the duty of the court to charge the jury that, defendant having relied upon an alibi, the burden was upon the State to show conclusively and decisively that the defendant was the person that committed the offense, and that he was present at the time and place when said offense was committed. And the court erred in charging the jury that upon the evidence in the case the jury would be justified in finding that some other than defendant committed the offense. There was no admission on part of defendant or his counsel that would give weight to this charge by his Honor." This is a broadside exception to the charge of the court without specifying any particular error.

We have examined the charge of the court with great care, and this examination discloses that the charge presented every phase of defendant's defense, fully and impartially, and is free from legal error.

The alibi of the defendant was strong and supported by witnesses of good character, and, upon the evidence offered in his behalf, if believed, he was not guilty. But the weight of the evidence is for the jury and not for the court. The jury, upon competent evidence, has convicted the defendant of a capital offense, and the judgment as a matter of law must be upheld.

No error.