STATE v. JAMES P. NELSON, JR.

(Filed 19 December, 1930.)

**Criminal Law G r—A character witness may not be asked on cross-examination whether he would commit the offense charged against the defendant.**

> While cross-examination of a witness is very broad in its scope it will not be allowed to call for the opinion of a character witness upon the matter included in the determination of a controversy, as in this prosecution for false pretense, after the witness had only testified to the general character of the defendant charged with procuring a second note for the company for which he was an officer for the same debt and wrongfully using them both, a question asked on cross-examination if the witness would do the same thing is not for the purpose of impeaching him, but to place before the jury the witnesses' opinion upon the charge against the defendant laid in the indictment.

CRIMINAL ACTION, tried before *Harwood, Special Judge,* at February Term, 1930, of FORSYTH.

The defendant was indicted for false pretense. On or about 19 October, 1929, J. R. Jones bought an automobile from the Lindsay Fishel Buick Company. There was a balance of $552 due on the purchase price and said Jones executed a note for $552 and delivered the same to the defendant James P. Nelson, Jr., who was secretary and treasurer of the corporation. The maturity of the note was 17 January, 1930. Thereafter on 7 November, 1929, Jones was in the place of business of the Buick Company and Nelson approached him and asked him if he would give a new note to replace the old note for the reason that the company had not been able to discount the old note. Thereupon said Jones executed a note for $583.41 to the General Motors Acceptance Corporation, which said note included the $552 note and a premium on an insurance policy. Jones testified that Nelson promised to mail the old note to him that afternoon. About a week later Jones called Nelson over telephone and asked him to mail the old note and Nelson promised to do so. On 1 December Jones went to Nelson's place of business and asked Nelson for the old note, and Nelson stated that the note was in the file, and that he would mail it to Jones that afternoon.

There was further evidence tending to show that on or about 22 November, 1929, Nelson had taken the original note of Jones for $552 together with several other notes, and had them discounted at the Wachovia Bank and Trust Company and the proceeds credited to the corporation of which Nelson was an officer.

The Lindsay Fishel Buick Company was closed about 1 December. The defendant Nelson admitted that the original Jones note was not returned to Jones and was discounted at the bank, but that same was done by mistake, and that when he had discovered the mistake he attempted to get the note back so as to return it to Jones, but had been unable to do so before his company failed.

The defendant offered about sixteen witnesses who testified that he was a man of good character. The record shows substantially the following with reference to the testimony of nine of said character witnesses:

1. Perry Hilts testified on direct examination as follows:

"I have known the defendant since 1920, and know his general reputation. It is good." This was all the testimony given by said witness."

(Question): "Please state to his Honor and the jury whether or not you—not Nelson—in the conduct of your business, when a man has given you a note for a deferred payment on an automobile and you took another note in lieu of it if you then discounted both of them for the one indebtedness?" (Answer): "No, sir."

(Question): "Have you ever done such a thing?" (Answer): "No, sir."

To the foregoing questions and answers the defendant objected. The objection was overruled and the defendant excepted.

The court instructed the jury as follows: "Gentlemen of the jury, the answer of the witness to the question will be considered by you as bearing upon this man's character and reputation, and has nothing to do with the defendant in this case."

2. Hoyle C. Ripple, witness for the defendant, testified as follows: "I am practicing law in Winston-Salem, and have known the defendant about eight years. His general character is good." This was all the testimony given by the witness on direct examination.

Cross-examination is as follows: (Question)—"Did you ever collect a debt of $550 against any man twice, knowingly?"

Thereupon the court stated: "The answer of the witness may be considered by the jury as relating to the character and reputation of witness only."

(Answer): "No, sir, I have never been that good a collector, Mr. Graves."

(Question): "Do you mean to say you would ever do such a thing as that?" (Answer): "No, sir, I never said I would."

To the foregoing questions the defendant objected. The objection was overruled and the defendant excepted.

3. Guy Scott, a witness for defendant, testified as follows on direct examination:

"I am a deputy sheriff of Forsyth County and have been for several years. I know the defendant and know his general character. It is good."

Cross-examination was as follows:

(Question)—"Will you please tell his Honor and the jury whether you have ever collected the amount of $550 from a man twice, or got one note and discounted that and then got another note in lieu of that note, and discounted that one?" (Answer): "No, sir, I have not."

To the foregoing questions the defendant objected. The objection was overruled and the defendant excepted.

4. J. Erle McMichael testified on direct examination as follows: "I am clerk of the Superior Court of Forsyth County. I have known the defendant, James P. Nelson, since 1921. His general character is good."

This was all the testimony given by said witness on direct examination.

Cross-examination was as follows: "I never saw these two notes. I think one of them passed through my office." (Question): "Did you ever when you had a man's note for $550 induce him to give you another note for $550 and collect on both of them?" (Answer): "No, sir."

To the foregoing questions and answers the defendant objected. The objection was overruled and the defendant excepted.

5. T. C. Cough, witness for defendant, on direct examination testified as follows: "I am in the automobile business. I know the defendant. His general character is good."

The foregoing was all the testimony given by said witness on direct examination.

Cross-examination is as follows: (Question)—"Do you sell automobiles?" (Answer): "Yes, sir." (Question): "By the way, have you ever, since you were born or in the automobile business, sold an automobile and taken notes for deferred payments?" (Answer): "Yes, sir." (Question): "Did you ever induce a man, after he had executed one note, to give you another note for the same indebtedness and discount both of them?" (Answer): "No, sir, not as I know of."

To the foregoing questions the defendant objected. The objection was overruled and defendant excepted.

The examination of other witnesses was substantially similar to the foregoing.

There was a verdict of guilty, and the judgment of the court was that the defendant be confined in the State's prison for a term of three years, sentence to be suspended if the defendant should make good the note of R. R. Jones and pay to the school fund the sum of $2,500, and the cost of this action.

From the foregoing judgment the defendant appealed.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*John B. Slawter for defendant.*

BROGDEN, J. The paramount question of law presented by the record is whether the cross-examination of character witnesses for defendant was within the law.

The court instructed the jury in two instances that the type of cross-examination pursued was competent only to discredit or impeach the witness himself. In other instances no instruction whatever was given. Cross-examination of a witness is not a matter of privilege or grace, but a matter of right, and is one of the most effective means known to the law for the ascertainment of truth and for testing the soundness or fallacy of the declarations of a witness. Hence for this reason cross-examination must of necessity cover a wide range, and consequently trial courts are justified in permitting wide latitude in subjecting witnesses to proper legal tests.

The decisions of this State have recognized and approved various methods of impeaching witnesses—notably (1) by proof of bad character; (2) proof of materially inconsistent and contradictory statements; (3) by disproving statements made in court by testimony of other witnesses; (4) by cross-examination tending to show (a) that the witness had been convicted of a crime although evidence of mere accusation of crime is incompetent; (b) bias or fallacy; (c) animus, feeling, kinship or mental capacity; (d) lack of veracity or memory. *S. v. O'Neale,* 26 N. C., 88; *S. v. Efler,* 85 N. C., 585; *Bank v. Pack,* 178 N. C., 388, 100 S. E., 615; *Rutledge v. Mfg. Co.,* 183 N. C., 430, 111 S. E., 774; *S. v. Jeffreys,* 192 N. C., 318, 135 S. E., 32; *Milling Co. v. Highway Commission,* 190 N. C., 692, 130 S. E., 724; *Nichols v. Bradshaw,* 195 N. C., 763, 143 S. E., 469; *S. v. Maslin,* 195 N. C., 537, 143 S. E., 3; *Clay v. Connor,* 198 N. C., 200; *S. v. Beal,* 199 N. C., 278.

The primary purpose of impeachment is to reduce or discount the credibility of a witness for the purpose of inducing the jury to give less weight to his testimony in arriving at the ultimate facts in the case. It has been generally held that a character witness may be cross-examined with respect to the extent of his knowledge and acquaintance with the person in whose behalf he testifies or with regard to the sources of information upon which he bases his estimate of character. *S. v. Perkins,* 66 N. C., 126; *S. v. Austin,* 108 N. C., 780, 13 S. E., 219; *S. v. Killian,* 173 N. C., 792, 92 S. E., 499.

Applying the rules of law to the facts, it is clear that the questions propounded to the witness on cross-examination were not intended to disparage the witness, but rather to put before the jury the opinion of

the witness upon the charges against the defendant laid in the indictment. In other words, the effect of the cross-examination is to ask the witness, "Would you have done what the defendant is charged in the bill of indictment for doing, or do you approve what the defendant is charged with doing?" In effect this is requiring the witness to express an opinion upon the merits or demerits of the charge laid against the defendant. Indirectly these questions tended to elicit the opinion of witness that the defendant would be a man of bad character if he had done the things alleged against him.

We find no law broad enough and liberal enough to sustain the cross-examination complained of in this case, and the defendant is entitled to a

New trial.